# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| STEVEN HEWETT,<br><br>                  *Plaintiff,*<br><br>   v.<br><br><br>CITY OF KING,<br><br>                  *Defendant,*<br><br>   and<br><br>THE AMERICAN LEGION and<br>AMERICAN LEGION POST 290 OF<br>KING, NORTH CAROLINA<br>          *Defendants-Intervenors.* | Case No. 1:12-cv-1179-JAB-JLW |

## Brief in Support of Plaintiff's Motion for Summary Judgment

John M. Moye (NC Bar No. 35463)
KILPATRICK TOWNSEND &
STOCKTON LLP
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
(919) 420-1821
JMoye@kilpatricktownsend.com

Ayesha N. Khan (*pro hac vice*)
Gregory M. Lipper (*pro hac vice*)
AMERICANS UNITED FOR SEPARATION OF
CHURCH AND STATE
1301 K Street NW, Suite 850
Washington, DC 20005
(202) 466-3234
khan@au.org
lipper@au.org

## Table of Contents

Table of Authorities ........................................................................................................ iii

Introduction ................................................................................................................... 1

Question Presented ....................................................................................................... 2

Nature of Matter Before the Court ............................................................................. 3

Statement of Facts ......................................................................................................... 3

    A.   The City of King Displays Christian Symbols at the Veterans
         Memorial ............................................................................................................ 4

         1.   The City of King displays the Christian flag at the Veterans
              Memorial ................................................................................................. 4

         2.   After Mr. Hewett objects to display of the Christian flag, the
              City Manager warns that Mr. Hewett will answer to Jesus
              Christ and the Mayor states that Mr. Hewett "definitely needs
              us to pray for him." ............................................................................... 4

         3.   The City removes the Christian flag, but then looks to return it
              in response to public pressure; the Mayor proclaims that King
              is a "Christian community." ................................................................... 6

         4.   After the City adopts the Flag Policy, the Christian flag returns .................... 8

         5.   The City adds a statue of a "praying soldier" kneeling before a
              Latin cross. ............................................................................................ 11

    B.   The City of King Uses the Veterans Memorial as a Venue for
         Events Featuring Christian Prayers and other Christian Content ........................ 12

         1.   The City organizes, sponsors, and participates in religious
              events at the Veterans Memorial ................................................................ 12

         2.   The City purports to delegate sponsorship of these religious
              events, but continues to sponsor, organize, and participate in
              them. ........................................................................................................ 14

Argument ....................................................................................................................... 17

i

I.      The City of King Impermissibly Displays the Christian Flag at the
        Veterans Memorial ................................................................................................. 19

        A.      The Flag Policy Reflects the City's Purpose and Effect of
                Advancing and Endorsing Religion and Christianity ...................................... 19

        B.      The Christian Flag Impermissibly Dominates the Forum ............................... 25

II.     The City of King Impermissibly Displays the Cross Statue at the
        Veterans Memorial ................................................................................................. 26

III.    The City of King Impermissibly Hosts Religious Events at the
        Veterans Memorial ................................................................................................. 31

IV.     The City's Promotion of Christianity at the Veterans Memorial is
        Impermissibly Coercive. ........................................................................................ 34

Conclusion ........................................................................................................................ 35

Certificate of Service

Table of Authorities

**Cases**

*Already, LLC v. Nike, Inc.*,
   133 S. Ct. 721 (2013) ............................................................................ 34

*Allstate Financial Corp. v. Financorp, Inc.*,
   934 F.2d 55 (4th Cir. 1991) ................................................................... 18

*American Atheists, Inc. v. Davenport*,
   637 F.3d 1095 (10th Cir. 2010).......................................................... 26, 27

*American Civil Liberties Union of Illinois v. City of St. Charles*,
   794 F.2d 265 (7th Cir. 1986)................................................................. 20

*American Civil Liberties Union of Ohio Foundation, Inc. v. DeWeese*,
   633 F.3d 424 (6th Cir. 2011).................................................................. 18

*American Humanist Association v. City of Lake Elsinore*,
   No. 5:13-cv-989-SVW-OP, slip. op.
   (C.D. Cal. July 16, 2013) ..................................................... 22, 27, 28, 29

*Arkansas Game & Fish Commission v. United States*,
   133 S. Ct. 511, (2012) ........................................................................... 30

*Board of Education of Westside Community Schools v. Mergens*,
   496 U.S. 226, 253 (1990) ....................................................................... 32

*Capitol Square Review & Advisory Board v. Pinette*,
   515 U.S. 753 (1995) .......................................................... 20, 23–24, 25

*Cohens v. Virginia*,
   19 U.S. (6 Wheat.) 264 (1821) ............................................................... 30

*County of Allegheny v. American Civil Liberties Union
   Greater Pittsburgh Chapter*, 492 U.S. 573 (1989) ........................... 18, 28

*Dash v. Mayweather*,
   731 F.3d 303 (4th Cir. 2013).................................................................. 27

*Doe v. Village of Crestwood*,
   917 F.2d 1476 (7th Cir. 1990)................................................................ 32

iii

*Engel v. Vitale,*
    370 U.S. 421 (1962) ............................................................................... 35

*Freedom from Religion Foundation, Inc. v. City of Marshfield,*
    203 F.3d 487 (7th Cir. 2000) .......................................................... 23, 24

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,*
    528 U.S. 167 (2000) ............................................................................... 34

*Greater Houston Chapter of American Civil Liberties Union v. Eckels,*
    589 F. Supp. 222 (S.D. Tex. 1984) ................................................... 26, 29

*In re Springmoor, Inc.,*
    498 S.E.2d 177 (N.C. 1998) .................................................................. 19

*Jager v. Douglas County School District,*
    862 F.2d 824 (11th Cir. 1989) .............................................................. 34

*Jewish War Veterans of the United States v. United States,*
    695 F. Supp. 3 (D.D.C. 1988) ............................................................... 29

*Lamb's Chapel v. Center Moriches Union Free School District,*
    508 U.S. 384 (1993) ............................................................................... 18

*Larson v. Valente,*
    456 U.S. 228 (1982) ............................................................................... 19

*Lee v. Weisman,*
    505 U.S. 577 (1992) ................................................................. 18–19, 35

*Lemon v. Kurtzman,*
    403 U.S. 602 (1971) ............................................................................... 18

*McCreary County v. American Civil Liberties Union of Kentucky,*
    545 U.S. 844 (2005) ......................................................................... 20, 25

*Mellen v. Bunting,*
    327 F.3d 355 (4th Cir. 2003) ................................................................ 18

*Newman v. City of East Point,*
    181 F. Supp. 2d 1374 (N.D. Ga. 2002) ............................................ 32, 33

iv

*North Carolina Civil Liberties Union Legal Foundation v. Constancy*,
    947 F.2d 1145 (4th Cir. 1991) ........................................................... 31–32

*Peck v. Upshur County Board of Education*,
    155 F.3d 274 (4th Cir. 1998) ................................................................. 25

*Pelphrey v. Cobb County*,
    547 F.3d 1263 (11th Cir. 2008) ............................................................. 18

*Salazar v. Buono*,
    559 U.S. 700 (2010) ........................................................................ 30, 31

*Smith v. County of Albemarle*,
    895 F.2d 953 (4th Cir. 1990) ................................................................. 24

*Trunk v. City of San Diego*,
    629 F.3d 1099 (9th Cir. 2011) ................................................... 20, 22, 26

## Other

*Crux Immissa*, Wikipedia, http://en.wikipedia.org/wiki/Crux_immissa ............................ 4

Federal Rule of Civil Procedure 56(c) ................................................................. 18

North Carolina Constitution Article I, Section 13 ............................................. 19

North Carolina Constitution Article I, Section 19 ............................................. 19

<u>Introduction</u>

Defendant City of King uses its Veterans Memorial to honor Christian veterans and Christian veterans alone. In 2004, the City of King built a Veterans Memorial, which included a Christian flag. In 2010, the City added a statue of a soldier kneeling before a Latin cross ("Cross Statue"). And since 2004, the City has used the Veterans Memorial to host Memorial Day, Veterans Day, and September 11 ceremonies featuring Christian prayers and extensive Christian content.

When Plaintiff Steven Hewett—a decorated veteran of the war in Afghanistan— has raised concerns about its promotion of Christianity at the Veterans Memorial, the City's response has been consistent: first, it refuses to budge; then, it makes cosmetic changes that nonetheless leave the City's promotion of Christianity apparent to everyone.

After receiving a complaint from Mr. Hewett about the display of the Christian flag, the City initially disparaged Mr. Hewett, then grudgingly voted to remove the Christian flag, and then responded to public backlash by returning the Christian flag to the under the guise of a "limited public forum" that allows King residents to enter a lottery to display religious symbols at the Veterans Memorial. The result: the Christian flag continues to fly on at the City-owned, City-operated Veterans Memorial all but a few weeks of every year.

As for the Cross Statue, Defendants' expert now contends that the Latin cross is designed to represent the grave marker of a soldier killed on the battlefield during World War II or the Korean War. But the City claims that the Cross Statue is intended to memo-

rialize veterans of *all* wars, and even Defendants' expert recognizes that the Latin cross is not a universal marker for soldiers' graves. The same entity that made the design for the City's Cross Statue sells a "fallen soldier" template without religious imagery; and even City officials agree that this non-religious alternative would memorialize fallen soldiers as effectively as the Cross Statue. Yet the City continues to display the Cross Statue at the Veterans Memorial—just feet from the Christian flag.

After Mr. Hewett filed this lawsuit, the City purported to transfer responsibility for its religious memorial ceremonies to third parties. But this delegation is a litigator's fiction; even now, the City continues to formally sponsor and finance the events and help with their planning, and the Mayor continues to participate extensively in his official capacity. Needless to say, the events remain as religious as ever, full of Christian prayers and other Christian content—and they take place at the Veterans Memorial, beside the Christian flag and Cross Statue displays.

Mr. Hewett fought alongside soldiers of all faiths and no faith, and he fought in defense of American freedoms, including the freedom of religion. The City's decision to honor only Christian veterans excludes Mr. Hewett from the Veterans Memorial and the ceremonies held there, and the City's attempts to outsource responsibility for its decisions merely add insult to injury.

<u>Question Presented</u>

Whether the City of King promotes, advances, endorses, or coerces religion and Christianity at its Veterans Memorial by (1) displaying the Christian flag for several

years, and then converting the Christian flag display into a so-called "public forum" reserved for religious flags, at which the Christian flag has flown for all but a few weeks of every year; (2) building and displaying a statue of a soldier kneeling before the Latin Cross, beside the Christian flag; and (3) using the Veterans Memorial to host memorial ceremonies—near the Christian flag and Cross Statue—featuring Christian prayers and other Christian content.

## Nature of Matter Before the Court

Mr. Hewett challenges the City of King's ongoing promotion of religion generally, and Christianity in particular, at the City's Veterans Memorial. He challenges the following practices: (1) the City of King's display of the Christian flag at the Veterans Memorial, (2) the City's display of the Cross Statue at the Veterans Memorial, and (3) the City's use of the Veterans Memorial to host memorial ceremonies featuring Christian prayers and other Christian content. American Legion and American Legion Post 290 (collectively "American Legion") have intervened to defend the Cross Statue.

Mr. Hewett seeks a declaratory judgment that the City's promotion of religion and Christianity at the Veterans Memorial violates both the federal and North Carolina constitutions; a permanent injunction barring the City's practices; and nominal damages for the City's past violations.

## Statement of Facts

The City of King uses its Veterans Memorial to display Christian symbols, including the Christian flag and the Cross Statue, and to host events with Christian content.

3

A. *The City of King Displays Christian Symbols at the Veterans Memorial.*

    1. *The City of King displays the Christian flag at the Veterans Memorial.*

In 2004, the City of King built a Veterans Memorial in Central Park, a public park owned and maintained by the City. Ex. J at Hewett-31–33.[1] The Veterans Memorial displays eleven flags—including one for each of the five branches of the military, the American Legion flag, the Prisoners of War flag, the City of King Flag, the North Carolina state flag, and the United States flag. *Id.* The eleventh flagpole displayed the Christian flag. Ex. I1 (9/4/03 committee minutes) at King-1732; Ex. K1 (American Legion Post 290 interrogatory responses) at 4. The Christian flag features a



Christian flag at City's Veterans Memorial. Ex. L (Scott Burdick, *In God We Trust?*, YouTube, http://tinyurl.com/ExhibitL.)

Latin cross, "in which the vertical beam sticks above the crossbeam, [and] the main representation of the cross by which Jesus Christ was crucified." *Crux Immissa*, Wikipedia, http://en.wikipedia.org/wiki/Crux_immissa (all websites last visited Nov. 29, 2013).

    2. *After Mr. Hewett objects to display of the Christian flag, the City Manager warns that Mr. Hewett will answer to Jesus Christ and the Mayor states that Mr. Hewett "definitely needs us to pray for him."*

Mr. Hewett is a City of King resident and veteran of the United States Army who received a Bronze Star while serving in Afghanistan. Ex. F (Hewett Dep.) at 161:7–11. In July 2010, he spoke by phone with then-City Manager John Cater—the City's chief ad-

---

[1]    Exhibits A–JJ9 accompany the Declaration of Gregory M. Lipper. Exhibits KK1–QQ accompany the Declaration of Steven R. Hewett.

ministrative officer, Ex. C (Warren Dep.) at 28:24–29:1, 36:16–21; Ex. B (Cater Dep.) at 22:20–23—to anonymously express his concern that the City's display of the Christian flag at the Veterans Memorial excludes non-Christian veterans. Mr. Cater responded that "it is so unfortunate that legally speaking you are probably correct." Ex. KK1 (excerpt of recording), http://tinyurl.com/ExhibitKK1.[2]

Mr. Cater also warned that Mr. Hewett would answer to God and Jesus Christ for objecting to the City's display of the Christian flag. Ex. KK2 (excerpt of recording), http://tinyurl.com/ExhibitKK2; Ex. B (Cater Dep.) at 254:7–12. Asked how he would feel if the City's elected officials were Muslim and flew the Muslim flag at the Veterans Memorial, Mr. Cater responded,

> if they were all Muslims and they were to put the Muslim flag out by the Veterans Memorial, I would say that they were making a serious mistake that one day they were going to have to pay for. Can I make them not do it? No I can't. … One day if they choose a god that happens not to be the real god then they will pay for that.

Ex. KK3 (excerpt of recording), http://tinyurl.com/ExhibitKK3. He also told Mr. Hewett, "You're so ashamed of what you're saying, you won't even give me your last name." Ex. KK4 (excerpt of recording), http://tinyurl.com/ExhibitKK4; *see also* Ex. KK5 (recording of full conversation), http://tinyurl.com/ExhibitKK5.

At its next meeting, the City Council discussed Mr. Hewett's complaint. Ex. Q1 (8/2/10 minutes) at King-1345. Mayor Warren stated that Mr. Hewett "definitely needs us

---

[2]    The cited video excerpts can be viewed at the accompanying website links; physical copies of the video clips will also be filed with the Court.

to pray for him." Ex. S1 at Hewett-2; Ex. K7 (Defendant's RFA responses) at 1 (admitting to statement). Mayor Pro Tempore Burnette stated that the anonymity of the complaint "shows how cowardly these people are" and "advised people who don't like the Christian flag flying there to simply not look at it." Ex. S1 at Hewett-2; Ex. K7 (Defendant's RFA Responses) at 1 (admitting to statements).

The City attorney advised that the Christian flag should be removed. Ex. Q1 (8/2/10 minutes) at King-1345. But the City Council agreed unanimously to retain it. *Id.* When a citizen promised that if the Christian flag were removed she would "march up and down there with a placard," Mayor Warren promised, "I'll be right there with you." Ex. S1 at Hewett-2–3; Ex. K7 (Defendant's RFA responses) at 1 (admitting to statement).

    3. *The City removes the Christian flag, but then looks to return it in response to public pressure; the Mayor proclaims that King is a "Christian community."*

A month later, after receiving letters from Mr. Hewett's counsel and the ACLU, the City voted to remove the Christian flag from the Veterans Memorial. Ex. Q3 (9/15/10 minutes) at King-1354. Mayor Warren told reporters that the decision was "heartwrenching for our Council" because its members were "good, Christian people, every one of them"; he added, "Is the battle over? I won't say that." Ex. O1 (video excerpt of news segment), http://tinyurl.com/ExhibitO1; Ex. O2 (video of full news segment), http://tinyurl.com/ExhibitO2.

The community's reaction was fierce. Several hundred citizens signed a petition demanding the Christian flag's return. Ex. T (petition) at King-1201–41. The City received hundreds of calls, faxes, letters, and emails urging the City to return the Christian

flag to the Veterans Memorial and warning that City Council members who refused would lose their seats. *See* Ex. U (collecting correspondence); Ex. V at King-933 (City received 50–100 calls, all opposing removal); Ex. B (Cater Dep.) at 151:6–21 (removal opposed by "large number of people"). The City's designee testified that "so many people were so upset" and "it seemed like the community was so angry at the council." Ex. A (Hatley Dep.) at 344:4–345:1; *See also, e.g.*, Ex. Q5 (10/11/10 minutes) at 1–16 (citizen testimony); Ex. S2 at Hewett-8–12 (same); Ex. A (Hatley Dep.) at 408:17–409:13; Ex. S11 (King residents displayed the Christian flag throughout the city); Ex. P1–P3 (news clips of community's reaction). City residents "voiced their unhappiness" at "meetings, to council members, to [the City Manager], to administration. It was everywhere." Ex. B (Cater Dep.) 146:18–147:1.

In addition, protesters held an ongoing vigil, in support of displaying the Christian flag, at the Veterans Memorial, where they stood next to a freestanding Christian flag displayed directly in front of the Memorial's other flagpoles. Ex. S3 at Hewett-28–30. A local ordinance required protestors to leave Central Park by midnight each night, Ex. W1 at Hewett-86, but the City Manager allowed them to remain overnight "because they had much public support." Ex. B (Cater Dep.) at 239:14–240:15; *see also* Ex. W2 at King 937–39; Ex. W3.

On October 23, 2010, thousands of people rallied in Central Park. Ex. S4 at Hewett-804–05; *see also* Ex. P4–P9 (videos of rally). An attorney from the Christian Law Association declared that he could "think of some Muslim countries" to which objectors

7

to the Christian flag display "can move to if they don't like America." Ex. M1 (video excerpt of speech), http://tinyurl.com/ExhibitM1; Ex. M2 (full video of speech), http://tinyurl.com/ExhibitM2.

As pressure mounted, the City Council sought to return the Christian flag. At an October 11, 2010 meeting called to discuss the Christian flag, the City Council discussed three options, including creation of a "limited public forum and policy" that would reserve the eleventh flagpole on the Veterans Memorial for the display of flags with certain religious emblems. Ex. Q5 (10/11/10 minutes) at 1. At the same meeting, citizens thanked Mayor Warren for declaring that that "King is a Christian community." Ex. Q5 (10/11/10 minutes) at 2, 4; Ex. K7 (Defendant's RFA responses) at 4 (admitting to statement).

### 4. After the City adopts the Flag Policy, the Christian flag returns.

The City returned the Christian flag to the Veterans Memorial by purporting to create a "limited public forum," pursuant to a policy ("Flag Policy") authorized by the City Council in November 2010 and formally adopted in December 2010. Ex. B (Cater Dep.) at 149:13–23; Ex. Q9 (12/6/10 minutes) at 4. This policy purports to designate one of the Memorial's eleven flagpoles as a "limited public forum for the purpose of flying, on a rotating basis … flags which represent the faith traditions of men and women who have served in the U.S. military." Ex. X (policy) at King-1185 ¶ 2. Citizens may enter a lottery to win the right to display, for one week at a time, a flag that "displays the emblems of belief recognized by the U.S. Department of Veterans Affairs … for placement

8

on government headstones or markers." *Id.* at King-1187 ¶ 10(b). The symbols must appear on "a white, colored, or multi-colored background," *Id.* at King-1187 ¶ 10(c), King-1191, and citizens may not add "any additional words or lettering not already incorporated in the recognized emblem." *Id.* at King-1187 ¶ 10(c).

The Flag Policy was drafted by the City's legal counsel from Alliance Defending Freedom (ADF), which advised King residents "to be mobilized and stand together and fight; you want to understand the nature of your enemy…." Ex. N1 (video clip from Nov. 22, 2010 City Council meeting), http://tinyurl.com/ExhibitN1; *see also* Ex. N2–N4 (longer video excerpts of meeting). ADF decried "attack[s] on religious symbols" and promised that the Flag Policy "protects the rights of citizens to honor *local traditions* at a public veterans memorial in a city park." Ex. V at King-942 (emphasis added). After Mr. Hewett sued, the City retained ADF to provide legal services "in opposition to removing the Christian flag from the Veteran's Memorial." Ex. AA (ADF retainer agreement) at King-1437.

The public, the media, and the City government understood that the Flag Policy ensured that the Christian flag would dominate the Veterans Memorial. After the City adopted the Flag Policy, news reports proclaimed that the "Christian Flag will fly again," Ex. S5 at Hewett 6–7, and described the policy as "the city's plan for returning the Christian flag to the Veteran's Memorial." Ex. S6 at Hewett-19; Ex. S7 at Hewett-26. Another article—entitled "Keep Veteran's Memorial Flag: Christians Plot To Defeat ACLU At Their Own Game"—reported that "Christians realized they can monopolize the rotation

9

process for 'years to come.'" Ex. S7 at Hewett-23.

The City's policy reserves flag displays for King residents or nonresidents who had purchased a "paver" at the Veterans Memorial on or before November 30, 2010. Ex. X at King-1186 ¶ 7(b)(1). Mayor Warren was unaware of any King resident wanting to fly a flag other than the Christian flag. Ex. C (Warren Dep.) at 171:18–22. City Manager Cater understood that the Christian flag would predominate. Ex. B (Cater Dep.) at 151:6–21. And a local pastor told the media that the Flag Policy "restricts who can participate[,] which will eliminate outsiders from taking over the pole. The idea is for Christians to fill up the reservation list and tie up the pole for years to come. This will ensure that the Christian Flag keeps flying." Ex. S7 at Hewett-27.

As anticipated, the Christian flag flew at the Veterans Memorial for 47 of 52 weeks in 2011 and 47 of 52 weeks in 2012; it is also scheduled to fly for 47 of 52 weeks in 2013. Ex. Y1 at King-59–60 (2011); Ex. Y2 at King-419–20 (2012); Ex. Y3 at King-3374–75 (2013). In total, 141 of 156 weeks have featured or will feature the Christian flag; of the remaining 15 weeks, all but one of them were assigned to Mr. Hewett or his wife, who typically chose to fly no flag at all. *See id.* Ultimately, during all but one of the 156 weeks during this three-year period, the Veterans Memorial displayed either a Christian flag or no flag. *See id.*

Moreover, the City continues to display a framed picture of the original Veterans Memorial—with the Christian flag flying—at City Hall, next to the entrance to the City

10

Council chamber. Ex. Z1 (photos) at Hewett-173–74; Ex. A (Hatley Dep.) at 426:1–22.[3] The same picture—again, showing the Christian flag flying—is also displayed by the City at Central Park, a few feet away from the Veterans Memorial. Ex. Z2 (photos).

### 5. The City adds a statue of a "praying soldier" kneeling before a Latin cross.

In spring 2010, the Cross Statue was added to the Veterans Memorial alongside the Christian flag. In March 2010, the City's Community Appearance Advisory Commission recommended that "a yard shadow figure of a praying solider made out of metal be commissioned and placed at the King Veteran's Memorial." Ex. I2 (3/18/10 minutes) at King-1395; *see also* Ex. D (Hunsucker Dep.) at 31:10–32:22; 49:17–50:3. The design depicts a soldier kneeling, with his head bowed, before a Latin cross.


Left: Statue in Central Park (Ex. BB1 at Hewett-149). Right: Statue in Central Park with Christian flag in background (Ex. BB2 at Hewett-129).

The City Council unanimously voted to approve the Commission's recommendation to fund and build the "praying soldier" statue at the Veterans Memorial. Ex. R1 (4/5/10 minutes) at King-1398–99. The Cross Statue sits at the Veterans Memorial next to the flag display, including the Christian flag. *See* Ex. BB2 at Hewett-129.

---

[3]   The City has displayed other religious material on City property as well. *See, e.g.*, Ex. QQ (photos of Ten Commandments plaque and "In God We Trust" sign in police department); Ex. Z4 at King 1712–15 (Christian content on police Facebook page).

11

## B. The City of King Uses the Veterans Memorial as a Venue for Events Featuring Christian Prayers and other Christian Content.

Since at least 2004, the City has sponsored, organized, and participated in annual ceremonies in Central Park for Memorial Day, Veterans Day, and September 11. These ceremonies—which take place just feet from the Christian flag and the Cross Statue—feature prayers, including Christian prayers, and other Christian content.

### 1. The City organizes, sponsors, and participates in religious events at the Veterans Memorial.

The City of King has co-sponsored these Veterans Memorial events and coordinated them with American Legion Post 290 and the Stokes County Arts Council. Ex. K5 (Defendant's supplemental interrogatory responses) at 3–4; Ex. HH (event programs). Until this lawsuit was filed, these events were advertised as official "City of King" events. *Id.* City officials prepared the programs and posters and selected and invited the guest speakers. Ex. A (Hatley Dep.) at 263:4–7, 456:16–21; Ex. K5 (Defendant's supplemental interrogatory responses) at 3–4. The events also feature extensive participation by Mayor Warren—he delivers welcoming remarks, introduces the guest speaker, and lays a ceremonial wreath at the Veterans Memorial, all in his official capacity. Ex. HH (event programs); Ex. C (Warren Dep.) at 24:14–25:23 (explaining when mayor acts in official capacity); Ex. B (Cater Dep.) at 110:15–112:20 (same).

Each of the City's Memorial Day and Veterans Day ceremonies has featured at least two prayers; typically, at least one prayer at each event is delivered by a City chaplain. Ex. HH (event programs); Defendant's Answer (Dkt. #13) ¶ 4. Many, if not all, of

12

these prayers have been overtly Christian. *See* Ex. C (Warren Dep.) at 66:12–67:4, 70:6–10; Ex. E (Holland Dep.) at 36:19–36:25, 112:22–113:18, 118:6–12; Ex. F (Hewett Dep.) at 220:19–221:8. They have invoked "the selfless sacrifice of Your Son, Jesus Christ"; asserted that those who have died in military service "have followed in the footsteps of Your Son"; and prayed "in Christ's name" and "in Jesus's name." *See, e.g.*, Ex. LL1 (video of 2010 Memorial Day opening prayer), http://tinyurl.com/ExhibitLL1; Ex. LL2 (video of 2010 Memorial Day closing prayer), http://tinyurl.com/ExhibitLL2; Ex. MM1 (video of 2012 Memorial Day opening prayer), http://tinyurl.com/ExhibitMM1; Ex. MM2 (video of 2012 Memorial Day closing prayer), http://tinyurl.com/ExhibitMM2; Ex. NN1 (video of 2012 Veterans Day opening prayer), http://tinyurl.com/ExhibitNN1; Ex. NN2 (video of 2012 Veterans Day closing prayer), http://tinyurl.com/ExhibitNN2; *see also* Ex. LL3 (full video of 2010 Memorial Day event), http://tinyurl.com/ExhibitLL3; Ex. MM3 (full video of 2012 Memorial Day event), http://tinyurl.com/ExhibitMM3; Ex. NN3 (full video of 2012 Veterans Day event), http://tinyurl.com/ExhibitNN3.

The City previously used the Veterans Memorial as a venue for September 11 ceremonies with extensive Christian content. Ex. C (Warren Dep.) at 90:12–24. For example, at the 2009 September 11 ceremony, pastors and church leaders delivered prayers, quoted from the Bible, and read Psalms; and many thanked God "for a leader who allows us to gather and pray"; musicians (and the chorus from the West Stokes public high school) performed Christian songs such as "American Christian"; and Mayor Warren ended the services with a prayer proclaiming, "May your passenger be the Lord Jesus

13

Christ." Ex. S8 at Hewett-46–47.

After Mr. Hewett's counsel wrote to the City, in early 2010, objecting to the religious nature of the City's ceremony, Mayor Warren stated that "[f]uture memorial services of this type will be sponsored and organized by private organizations" and that he would participate in future events "as a private citizen." Ex. II at Hewett-39. But this did not happen: the City continued to sponsor the September 11 ceremonies until 2012. Ex. A (Hatley Dep.) at 254:24–255:7; Ex. R3 (9/4/12 minutes) at 9.

2. *The City purports to delegate sponsorship of these religious events, but continues to sponsor, organize, and participate in them.*

Six months after Mr. Hewett filed this lawsuit, the City's legal counsel prepared a memo stating that American Legion and Stokes County Arts Council had agreed "to take over sponsorship, planning, and organization of the Veteran's Day and Memorial Day celebrations held annually within the City of King corporate limits." Ex. JJ1 (memo) at King-2309; Ex. C (Warren Dep.) at 75:9–23, 81:8–23, 89:9–18. But the City Council did not vote to suspend sponsorship of these events, and the City did not inform the public or other organizations of these purported changes. *Id.* at 83:11–21. Quite the contrary: to ensure that the Stokes County Arts Council does not have to pay required fees for its events, in November 2012 the City Council voted "to designate all [Stokes County] Arts Council events held at City of King facilities as City sponsored." Ex. R4 (11/5/12 minutes) at 5–6.

In addition, American Legion believes that the City has conferred a perpetual reservation of Central Park for the memorial events. Ex. E (Holland Dep.) at 124:14–125:5; *see also* JJ7 at Stokes-1–2. The City Clerk also provided contact lists, a planning check-

14

list, and templates for ads and programs. Ex. JJ2 at Stokes-13–Stokes-14; Ex. JJ3 at Stokes-8, Stokes-11; Ex. JJ4 at AL-187; Ex. JJ5 at King-2312; Ex. A (Hatley Dep.) at 455:6–456:15, 463:7–464:6; Ex. C (Warren Dep.) at 84:25–85:8.

Unsurprisingly, the 2013 ceremonies were virtually identical to their predecessors, and the City of King's sponsorship and participation were apparent. With the exception of omitting the City's name from the list of sponsors, the ceremonies' programs were identical to those from past years, and the events proceeded in the same order. Ex. HH (programs) at King-2301, Hewett-810; Ex. E (Holland Dep.) at 47:9–24; Ex. C (Warren Dep.) at 86:17–87:2. As in past years, the City's fire department displayed a large American flag from one of its trucks at the 2013 Memorial Day ceremony; the City did not charge for this service. Ex. K2 (American Legion Post 290 interrogatory responses) at 3–4; Ex. E (Holland Dep.) at 121:9–122:12.

The City continues to advertise the events on its website; for the 2013 Veterans Day ceremony, for instance, the City invited the public to "[c]ome join us as we honor and pay our respect to the brave men and women of our armed forces and dedicate the new tiles for the Veteran's Memorial." Ex. JJ9 at Hewett-809. The ceremony also featured official dedications of City property, including an addition to the Veterans Memorial and new paving tiles purchased from the City and added to the Veterans Memorial. Ex. HH (programs) at Hewett-810; *see also* Ex. A (Hatley Dep.) 287:18–289:16.

Mayor Warren also continues to play a major role. At the 2013 Memorial Day ceremony, he welcomed the crowd, thanked the event's sponsors, asked God to bless Amer-

15

ica and the citizens, and helped to lay the ceremonial wreath. Ex. C (Warren Dep.) at 78:24–79:7, 80:2–12; Ex. OO3 (video of ceremony), http://tinyurl.com/ExhibitOO3. At the 2013 Veterans Day ceremony, Mayor Warren welcomed the crowd, introduced the guest speaker, directed attendees to move to a new location, introduced an Eagle Scout, and helped to lay the wreath. Ex. HH (programs) at Hewett-810; Ex. PP4 (video of ceremony), http://tinyurl.com/ExhibitPP4. This is no fluke: according to Mayor Warren, "it's part of my duties as the mayor to be represented there." Ex. C (Warren Dep.) at 79:8–13; Ex. JJ9 at Stokes-9.

As with the previous ceremonies, both the 2013 Memorial Day and Veterans Day ceremonies were filled with Christian prayer and other religious content. The Memorial Day ceremony opened with a prayer "in Christ's name" and closed with a prayer offered by the Assistant City Chaplain, who thanked both the Mayor and American Legion for inviting him to offer a prayer. Ex. OO1 (video of opening prayer), http://tinyurl.com/ExhibitOO1; Ex. OO2 (video of closing prayer), http://tinyurl.com/ExhibitOO2. The Assistant Chaplain asked attendees to "bow in prayer" with him, and then spoke of "the selfless sacrifice of Your Son, Jesus Christ," asserting (as he did the year before) that those who have given their lives in military service "have followed in the footsteps of Your Son, Jesus." Ex. OO2 (video of closing prayer), http://tinyurl.com/ExhibitOO2.

At the Veterans Day ceremony, the West Stokes High School band opened the ceremony with a rendition of the song "Jesus Loves Me." Ex. PP4 (video of ceremony) at

16

1:16–3:11, http://tinyurl.com/ExhibitPP4. Citizens were asked to join the opening prayer "in Jesus's name." Ex. PP1 (video of opening prayer), http://tinyurl.com/ExhibitPP1. The closing prayer was delivered "in the name of Jesus Christ our Lord," and it proclaimed that "our freedom in Christ came because of that supreme price that He paid." Ex. PP2 (video of closing prayer), http://tinyurl.com/ExhibitPP2.

The guest speaker thanked "Mr. Mayor" for introducing him, and proclaimed that he had "accepted Christ as [his] savior." He added that "there are two that died for you: the U.S. solider [and] the Son of God, Jesus Christ"—the latter "died for your freedom in eternity." And he urged "each" member of the audience "to teach your children, your grandchildren to respect God." Ex. PP3 (video excerpts of speech), http://tinyurl.com/ExhibitPP3; Ex. PP4 (full video of speech), http://tinyurl.com/ExhibitPP4; *see also* Ex. PP5 (full video of 2013 Veterans Day cere-mony), http://tinyurl.com/ExhibitPP5.

<u>Argument</u>

Plaintiff is entitled to summary judgment on his claims that both the federal and North Carolina constitutions prohibit the City promoting religion and Christianity at the Veterans Memorial by (1) displaying religious flags, including the Christian flag, (2) dis-playing the Cross Statue, just a few feet from the Christian flag, and (3) organizing, spon-soring, and participating in memorial ceremonies with Christian prayers and content, just

17

a few feet from the Christian flag and Cross Statue.[4] Summary judgment is appropriate here because "there is no genuine dispute as to a material fact, and the movant is entitled to a judgment as a matter of law." *Allstate Fin. Corp. v. Financorp, Inc.*, 934 F.2d 55, 58 (4th Cir. 1991) (citing Fed. R. Civ. P. 56(c)).

Any reasonable factfinder would conclude that the City is violating multiple obligations under the First Amendment's Establishment Clause. Under the *Lemon* test, government action must (1) have a secular purpose, (2) not have the principal or primary effect of advancing or inhibiting religion, and (3) not foster an excessive entanglement with religion. *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 395 (1993) (citing *Lemon v. Kurtzman*, 403 U.S. 602 (1971)). Likewise, the government may not convey a message of endorsement or disapproval of religion, *Cnty. of Allegheny v. Am. Civil Liberties Union Greater Pittsburgh Chapter*, 492 U.S. 573, 593 (1989); the Fourth Circuit treats the endorsement test as a "refinement" of *Lemon*'s second prong.

---

[4]  Mr. Hewett has standing to challenge these City's past and ongoing practices. A plaintiff establishes standing to challenge government religious displays or prayers at a government event by alleging direct exposure to the displays or prayers, or by establishing that he has altered his behavior to avoid such exposure. *See, e.g.*, *Am. Civil Liberties Union of Ohio Found., Inc. v. DeWeese*, 633 F.3d 424, 429 (6th Cir. 2011); *Pelphrey v. Cobb Cnty.*, 547 F.3d 1263, 1279–80 (11th Cir. 2008). When Mr. Hewett visits the Veterans Memorial, he is unwillingly exposed to the Christian flag and the Cross Statue. Ex. F (Hewett Dep.) at 6:20–7:19; Declaration of Steven Hewett ("Hewett Decl.") ¶ 9. If the Christian flag and Cross Statue were removed from the Veterans Memorial, he would visit more often. Ex. F at 61:2-4; Hewett Decl. ¶ 11. Mr. Hewett has also attended virtually all of the City's Memorial Day, Veterans Day, and September 11 ceremonies—including both of this year's ceremonies—and he intends to continue doing so. Ex. F at 102:12–103:1, 103:10-15; Hewett Decl. ¶ 10. Mr. Hewett believes that the Christian symbols, prayers, and messages at the Veterans Memorial and events exclude him and serve to honor only those veterans who are Christian. Hewett Decl. ¶ 10–11.

*Mellen v. Bunting*, 327 F.3d 355, 371 (4th Cir. 2003). In addition, the "government may not coerce anyone to support or participate in religion or its exercise." *Lee v. Weisman*, 505 U.S. 577, 587 (1992). And "[t]he clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982).

The same protections are provided by Article I, Section 13 and Article I, Section 19 of the North Carolina Constitution. North Carolina courts look to federal Establishment Clause cases to define the scope of the North Carolina provisions, and both the federal and North Carolina constitutions "demand the same neutrality on the part of the State." *In re Springmoor, Inc.*, 498 S.E. 2d 177, 180 (N.C. 1998).

## I. The City of King Impermissibly Displays the Christian Flag at the Veterans Memorial.

The display of the Christian flag at the Veterans Memorial is unconstitutional. Any reasonable observer would conclude that the City adopted the Flag Policy with a religious purpose—to display the Christian flag—and with the effect of advancing and endorsing religion generally and Christianity in particular. Even if the Flag Policy created an otherwise valid limited public forum, the Christian flag impermissibly dominates the forum.

### A. *The Flag Policy Reflects the City's Purpose and Effect of Advancing and Endorsing Religion and Christianity.*

The City itself has all but acknowledged that its original decision to display the Christian flag at the Veterans Memorial was unconstitutional. Ex. Q1 (8/2/10 minutes) at

19

King-1345; Ex. S1 at Hewett-2; Ex. K7 (Defendant's RFA responses) at 2; Ex. KK1 (excerpt of recording from call with City Manager Cater), http://tinyurl.com/ExhibitKK1. Indeed, the display of the Christian flag at the City's Veterans Memorial sends the message that the City favors Christian veterans over all others. When displayed on government property, "the cross dramatically conveys a message of governmental support for Christianity, whatever the intentions of those responsible for the display may be." *Am. Civil Liberties Union of Ill. v. City of St. Charles*, 794 F.2d 265, 271 (7th Cir. 1986). And a religious display at a war memorial has the effect "of honoring only those servicemen of that particular religion." *Trunk v. City of San Diego*, 629 F.3d 1099, 1101 (9th Cir. 2011) (quotation marks omitted).

The City's attempt to transform the Christian flag from government speech to private speech has not changed the message. Any reasonable factfinder would conclude that the City adopted the Flag Policy with an impermissible religious purpose and that its effect was to advance and endorse religion and Christianity. The City's purpose can be inferred from the Flag Policy's text, history, and context, including events preceding its enactment. *See McCreary Cnty. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 862 (2005). And the Flag Policy's effect can be determined by examining its history and application; the reasonable observer "must be deemed aware of the history and context of the community and forum in which the religious display appears. *Capitol Sq. Rev. & Advisory Bd. v. Pinette*, 515 U.S. 753, 778, 780 (1995) (controlling concurrence of O'Connor, J.).

Here, the City's conduct illustrates that it acted with the purpose of returning the Christian flag to the Veterans Memorial. The same context highlights the Flag Policy's effect of advancing and endorsing religion—by ensuring that the Christian flag would return to and dominate the Veterans Memorial.

*First*, City officials initially resisted removing the Christian flag—proclaiming that the City needed "to pray for" Mr. Hewett after he asked that it be removed, and warning Mr. Hewett that he would have to answer to God and Jesus Christ as a result of his complaint about the display of the Christian flag. Ex. KK2 (excerpt of recording); Ex. B (Cater Dep.) at 254:7–12; Ex. S1 at Hewett-1–2; Ex. K7 (Defendant's RFA Responses) at 1–2; Ex. C (Warren Dep.) at 158:24–159:11. Even after voting to remove the Christian flag, City officials lamented their decision: Mayor Warren said that the decision was "heart-wrenching for our Council" because its members were "good, Christian people, every one of them." Ex. O1 (video excerpt), http://tinyurl.com/ExhibitO1; Ex. O2 (full video), http://tinyurl.com/ExhibitO2. He also signaled that the City was not through: "Is the battle over? I won't say that." *Id.* at 2:19–31.

*Second*, the City created the Flag Policy to address overwhelming public opposition to removal of the Christian flag. *See, e.g.*, Ex. T (citizen petition) at King-1201–41; Ex. U (citizen correspondence); Ex. A (Hatley Dep.) at 392:13–24; Ex. B (Cater Dep.) at 151:6–21. The City's corporate designee testified that "so many people were so upset" and "it seemed like the community was so angry at the council" for removing the Christian flag; public opinion "seemed overwhelmingly in support of getting that Christian flag

21

back at the memorial." Ex. A (Hatley Dep.) at 344:4–345:1. *See Trunk*, 629 F.3d at 1120 ("[t]he starkly religious message of the Cross's supporters would not escape the notice of the reasonable observer"); *Am. Humanist Ass'n v. City of Lake Elsinore*, No. 5:13-cv-989-SVW-OP, slip. op. at 42 (C.D. Cal. July 16, 2013) ("comments of the members of the public at the various hearings reflect a message of religious endorsement"). While the City was contemplating its response to this public uproar, Mayor Warren proclaimed that the City of King is a "Christian community." Ex. Q5 (10/11/10 minutes) at 2, 4; Ex. K7 (Defendant's RFA responses) at 4 (admitting to statement).

After the City adopted the Flag Policy, the City's legal counsel decried "attack[s] on religious symbols" and proclaimed that the Flag Policy "protects the rights of citizens to honor *local traditions*" at the Veterans Memorial, Ex. V at King-942 (emphasis added); in context, this could refer only to the display of the Christian flag. Indeed, the Mayor admitted no citizen had expressed any desire to fly any flag other than the Christian flag. Ex. C (Warren Dep.) at 171:18-22.

*Third*, the public and news media understood that the City's policy authorized the display of the Christian flag and ensured that the Christian flag would dominate the Veterans Memorial. After the City Council voted to adopt the Flag Policy, news reports proclaimed that the "Christian Flag will fly again," Ex. S5 at Hewett 6–7, and described the policy as "the city's plan for returning the Christian flag to the Veteran's Memorial." Ex. S6 at Hewett 18–19; Ex. S7 at Hewett-26. Another article—entitled "Keep Veteran's Memorial Flag: Christians Plot To Defeat ACLU At Their Own Game"—reported that

22

"Christians realized they can monopolize the rotation process for 'years to come.'" Ex. S7 at Hewett-23. City Manager Cater understood that the Christian flag would predominate. Ex. B (Cater Dep.) at 151:6–21. And a local pastor explained, the City "restricts who can participate which will eliminate outsiders from taking over the pole. The idea is for Christians to fill up the reservation list and tie up the pole for years to come. This will ensure that the Christian Flag keeps flying." Ex. S7 at Hewett-27.

*Fourth*, as expected, the Christian flag has flown at the Veterans Memorial for 47 of 52 weeks in 2011 and 47 of 52 weeks in 2012; and it is scheduled to fly for 47 of 52 weeks in 2013. Ex. Y1 at King-59–60 (2011); Ex. Y2 at King-419–20 (2012); Ex. Y3 at King-3374–75 (2013). Out of the 156 weeks spanning these three years, Mr. Hewett accounted and his wife accounted for all but one of the 15 weeks in which something other than the Christian flag was flown. *See id.* And apart from one week in 2012, the flagpole at issue has always displayed either a Christian flag or no flag at all. *See id.*

*Fifth*, the Christian flag is virtually indistinguishable from the remainder of the flag display at the Veterans Memorial. It is part of a Veterans Memorial on City land in Central Park; it was officially displayed at the City's behest for six years; and it is flown on a flagpole that is virtually indistinguishable from the ten other flagpoles that populate the same memorial. *See Freedom from Religion Foundation, Inc. v. City of Marshfield*, 203 F.3d 487, 489, 495 (7th Cir. 2000) (transfer of Jesus Christ statue to private land does not cure Establishment Clause violation where privately-owned land was "virtually indistinguishable from City land"). Although the Supreme Court has upheld a private entity's

23

display of a cross in a public forum near City Hall, that cross was not physically part of a broader government memorial. *See Pinette* 515 U.S at 777–78 (controlling concurrence of O'Connor, J.).

Nor does the City's disclaimer "eliminate the patent aura of government endorsement of religion." *Smith v. Cnty. of Albemarle*, 895 F.2d 953, 958 (4th Cir. 1990). Each week a temporary sign is displayed on or near the flagpole, identifying the veteran being honored by the flag, and stating, "This flag is being flown at the request of a private citizen and is the private expression of such individual and is not an official view or expression of the City of King." Ex. X at King-1185 ¶ 4; Ex. S7 at King-27. Yet because the eleventh flagpole is physically part of what everyone agrees is a City-owned, City-operated memorial, no disclaimer can sever the Veterans Memorial from the Christian flag. *See Marshfield*, 203 F.3d at 489, 497 (disclaimer insufficient where no physical distinction between private display and government land).

Moreover, the City continues to affirmatively reinforce its ownership and sponsorship of the flagpole and the Christian flag. It continues to display—both at City Hall and in Central Park—pictures of the Veterans Memorial flying the Christian flag. Ex. Z1 (photos of picture in City Hall); Ex. A (Hatley Dep.) at 426:1–22 (picture has been displayed in City Hall for many years); Ex. Z2 (photos of picture in Central Park). The Christian flag is displayed just a few feet from the Cross Statue. And in response to this lawsuit, the City retained legal counsel for services "in opposition to removing the Christian flag from the Veteran's Memorial." Ex. AA at King-1437.

24

The City adoption of the Flag Policy suffers from the same problems as the conduct of the defendants in *McCreary County*. The *McCreary County* defendants posted the Ten Commandments on the walls of their courthouses, 545 U.S. at 850; then modified the display in response to a lawsuit, *id.* at 869; then modified the display again after the previous version was enjoined, *id.* at 855. Although the counties claimed that the third version of the Ten Commandments display reflected a new, secular purpose, *id.* at 871, the Supreme Court was unswayed, noting that the asserted new purpose was "presented only as a litigating position"; the defendants' prior displays and overtly religious statements could "not [be] erased … from the record of evidence bearing on current purpose." *Id.* The City of King stands in the same shoes: "No reasonable observer could swallow the claim that the [City] had cast off the objective so unmistakable in the earlier display[]." *Id.* at 872.

B. *The Christian Flag Impermissibly Dominates the Forum.*

Even if the Flag Policy somehow creates a genuine and neutral limited public forum, "[a]t some point … a private religious group may so dominate a public forum that a formal policy of equal access is transformed into a demonstration of approval." *Pinette*, 515 U.S. at 777 (controlling concurrence of O'Connor, J.). Even a "facially neutral policy" can violate the Establishment Clause if there is "empirical evidence that religious groups will dominate [the] open forum." *Peck v. Upshur Cnty. Bd. of Educ.*, 155 F.3d 274, 286 (4th Cir. 1998) (quotation marks omitted).

That standard is easily satisfied here. Since the City adopted the Flag Policy, the

25

Christian flag was displayed 47 out of 52 weeks in 2011 and 2012, and the Christian flag is scheduled for display in all but 5 weeks of 2013. Ex. Y1 at King-59–60 (2011 schedule); Ex. Y2 at King-419–20 (2012 schedule); Ex. Y3 at King-3374–75 (2013 schedule). This lineup confirms the local pastor's prediction: "Christians [will] fill up the reservation list and tie up the pole for years to come. This will ensure that the Christian Flag keeps flying." Ex. S7 at Hewett-27.

## II. The City of King Impermissibly Displays the Cross Statue at the Veterans Memorial.

A "sectarian war memorial carries an inherently religious message and creates an appearance of honoring only those servicemen of that particular religion." *Trunk*, 629 F.3d at 1101 (quotation marks omitted); *see also Greater Houston Chapter of Am. Civil Liberties Union v. Eckels*, 589 F.Supp. 222, 235 (S.D. Tex. 1984) (crosses and Star of David in war memorial "give the impression that only Christians and Jews are being honored"). The City's construction and display of the Cross Statue at the Veterans Memorial is unconstitutional: the purpose of the display is to honor only Christian veterans, and the display signals that the City is honoring only Christian veterans. The Christian message, moreover, is amplified by the Cross Statue's proximity to the Christian flag.

Courts have consistently prohibited governments from displaying monuments, like the Cross Statue, that single out Christian honorees. First, in *Trunk*, the Ninth Circuit prohibited the government from displaying a war memorial featuring a large Latin cross, along with other plaques and stones. 629 F.3d at 1102–03. Because the Latin cross is "the preeminent symbol of Christianity," a reasonable observer would believe that the gov-

26

ernment was honoring only Christian veterans. *See id.* at 1110–12.

Second, in *American Atheists, Inc. v. Davenport*, 637 F.3d 1095 (10th Cir. 2010), the Tenth Circuit prohibited the government from displaying a memorial, honoring fallen Utah police officers, consisting of twelve-foot high crosses listing information about the fallen troopers. *Id.* at 1111. The memorial was unconstitutional because "a memorial cross is not a *generic* symbol of death; it is a *Christian* symbol of death that signifies or memorializes the death of a *Christian*." *Id.* at 1122 (emphasis in original).

Third, in *Lake Elsinore*, the district court issued a preliminary injunction against the display of a statue nearly identical to the City's Cross Statue. No. 5:13-cv-989-SVW-OP, slip. op. at 2. The monument at issue depicted a soldier with his head bowed and kneeling before a Latin cross. *See id.* at 6–7. The district court held that the religious symbols were included for religious reasons, and that the city could have honored veterans just as effectively with non-religious images. *See id.* at 31–33. The monument was unconstitutional even after the city added a Star of David, because "[t]he use of such distinctively Christian and Jewish symbols to honor all veterans sends a strong message of endorsement and exclusion." *Id.* at 44–46 (quotation marks omitted).

Defendants have retained an expert, Joseph Glatthaar, who opines that the Cross Statue depicts "a combat soldier paying tribute to a fallen comrade at a hastily-built grave in the field of battle during either World War II or Korea." Ex. EE (Glatthaar Report) at 2; *see also* Ex. C (Warren Dep.) at 60:10–61:4; Ex. E (Holland Dep.) at 55:15–56:9. But this expert testimony does not require a different result, even it is admissible under

*Daubert*. "Like any other evidence, expert testimony … will not preclude summary judgment unless it raises a genuine dispute concerning a material fact." *Dash v. May-weather*, 731 F.3d 303, 316 (4th Cir. 2013).

Indeed, the court in *Lake Elsinore* rejected an argument similar to the one advanced by Defendants' expert: that the soldier kneeling before a Latin cross was "a historical depiction of a World War II era soldier at a cemetery kneeling at the grave of a fallen comrade." No. 5:13-cv-989-SVW-OP, at 13, 26–31. The court observed that—like the City of King—the defendant in *Lake Elsinore* had not previously claimed to honor World War II veterans in particular. *See id.* at 26–29. In fact, to this day the City of King claims that the Cross Statue is meant to honor all veterans, and not just those from particular wars. Ex. A (Hatley Dep.) at 297:25–298:8, 305:2–8; Ex. C (Warren Dep.) at 59:11–16; Ex. D (Hunsucker Dep.) at 35:5-9. And even Defendants' expert acknowledges that the cross was not commonly used as a grave marker during most American wars. Ex. G (Glatthaar Dep.) at 136:3–17, 137:20–23, 138:7–141:4, 142:12–147:25, 154:5–15.

Even if the Cross Statue were meant to honor only veterans from World War II and the Korean War, an array of non-religious alternatives remain. Where reasonable secular alternatives exist, "an observer reasonably might infer from the fact that the government has chosen to use the religious symbol that the government means to promote religious faith." *Cnty. of Allegheny*, 492 U.S. at 618. A military field manual during World War II and the Korean War mandated that burials on active battlefields be marked not by a Latin cross, but instead by a "stick, or large rock, or a bayonet with a helmet superim-

28

posed." Ex. GG2 (1945 War Department field manual) at 16; *see also* Ex. GG1 (1941 Army field manual, describing non-religious grave markers); Ex. CC (Piehler report) at 7; Ex. DD (Piehler response to Glatthaar surrebuttal) at 4. Defendants' expert admits that even in World War II and the Korean War, the cross was "not the only method of marking field-expedient graves" on the battlefield; and that when bodies were moved from the battlefield to temporary cemeteries, non-Christian soldiers were typically buried under a marker other than a cross. Ex. FF (Glatthaar surrebuttal) at 3, 5–9.

Courts have likewise recognized that many non-religious alternatives are available to honor veterans. *See Lake Elsinore*, No. 5:13-cv-989-SVW-OP, slip. op. at 32–33 (variety of secular images could serve to honor veterans); *Jewish War Veterans of U.S. v. United States*, 695 F. Supp. 3, 14 (D.D.C. 1988) ("The use of a cross as a memorial to fallen or missing servicemen is a use of what to some is a religious symbol where a non-religious one likely would have done as well."); *Eckels*, 589 F. Supp. at 234 ("the county can effectively recognize its war dead without resort to the use of [crosses or Stars of David]"). Indeed, the vast majority of American public war memorials lack religious symbols. Ex. CC (Piehler Report) at 17–18; Ex. G (Glatthaar Dep.) at 359:13–19 (conceding this point).

The very source of the Cross Statue's design reveals a non-religious alternative that memorializes fallen soldiers as effectively—if not more effectively—than the City's religious statue. The Cross Statue was traced



Ex. BB6, http://www.thewinfieldcollection.com/product/Fallen_Soldier_Shadow_Woodcrafting_Pattern/People; *see also* Ex. CC (Piehler report) at 9–10.

from a design sold by the Winfield Collection, entitled the "Soldiers Prayer Shadow Woodcraft Pattern." Ex. K1 (American Legion Post 290 interrogatory responses) at 5–6; Ex. BB3 at King-1402. Winfield sells a separate pattern—the "Fallen Soldier"—that does not include a Latin cross. Ex. BB6 (image). Even the Mayor and the chair of the City's Community Appearance Advisory Commission agree that this Cross-less statue would honor veterans just as effectively as the City's Cross Statue. Ex. D (Hunsucker Dep.) at 48:19–49:16; Ex. C (Warren Dep.) at 62:15–20.

Finally, the plurality's dicta in *Salazar v. Buono,* 559 U.S. 700 (2010), does not require a different result. There, the Supreme Court considered the disposition of a government World War I memorial, consisting of a cross in the desert, that the parties agreed was unconstitutional. *See id*. at 705–06 (plurality opinion). The plurality suggested that the cross was intended "simply to honor our Nation's fallen soldiers," not to "set the *imprimatur* of the state on a particular creed." *Id.* at 715. Yet because the parties did not dispute that the monument violated the Establishment Clause, *id.* at 713–14, the only question before the Court was whether the government could fix the violation by giving the land to a private party, *id.* at 714. And it is well settled that language unnecessary to the result "ought not to control the judgment in a subsequent suit when the very point is presented for decision." *Ark. Game & Fish Comm'n v. United States*, 133 S. Ct. 511, 520 (2012) (quoting *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 399 (1821) (Marshall, C.J.)).

In any event, the cross at issue in *Buono* was in a remote location, built by private citizens, and over seven decades old. *See* 559 U.S. at 705, 716. The Cross Statue, con-

30

versely, was designed by the City, funded by the City, placed by the City in Central Park, has stood for just over three years, and is displayed just a few feet from the Christian flag.

## III. The City of King Impermissibly Hosts Religious Events at the Veterans Memorial.

Both the federal and North Carolina constitutions prohibit the City from promoting religion (including Christianity) at the annual Memorial Day and Veterans Day ceremonies held at Central Park. Each of the City's Memorial Day and Veterans Day ceremonies has featured at least two prayers, often delivered by City chaplains. Ex. HH (event programs). Many, if not all, of these prayers are overtly Christian, invoking "the selfless sacrifice of Your Son, Jesus Christ" and similar language. *See* Ex. C (Warren Dep.) at 66:12–67:4, 70:6–10; Ex. E (Holland Dep.) at 36:19–36:25, 112:22–113:18, 118:6–12; Ex. F (Hewett Dep.) at 220:19–221:8; Ex. LL1 (video of 2010 Memorial Day opening prayer), http://tinyurl.com/ExhibitLL1; Ex. LL2 (video of 2010 Memorial Day closing prayer), http://tinyurl.com/ExhibitLL2; Ex. MM1 (video of 2012 Memorial Day opening prayer), http://tinyurl.com/ExhibitMM1; Ex. MM2 (video of 2012 Memorial Day closing prayer), http://tinyurl.com/ExhibitMM2; Ex. NN1 (video of 2012 Veterans Day opening prayer), http://tinyurl.com/ExhibitNN1; Ex. NN2 (video of 2012 Veterans Day closing prayer), http://tinyurl.com/ExhibitNN2. The City's now-discontinued September 11 ceremonies—also held at the Veterans Memorial—involved equally extensive Christian content. Ex. S8 at Hewett-46–47; Ex. C (Warren Dep.) at 90:12–24.

Prayer is inherently religious, and government sponsored prayer reflects a religious purpose and advances and endorses religion. *See N. Carolina Civil Liberties Union*

31

*Legal Found. v. Constangy*, 947 F.2d 1145, 1150 (4th Cir. 1991). Thus, courts have prohibited government entities from sponsoring, organizing, or participating in religious services or ceremonies. *See Doe v. Vill. of Crestwood*, 917 F.2d 1476, 1479 (7th Cir. 1990) (government entity sponsored religious event by inviting citizens to that event); *Newman v. City of E. Point*, 181 F. Supp. 2d 1374, 1381–82 (N.D. Ga. 2002) (government may not organize, advertise, promote, or endorse an event that includes prayer). Because the prayers have been consistently Christian, they affiliate the City with Christianity as well.

For two reasons, the City's purported transfer of sponsorship of the events to third parties—several months after this case began—does not change the result.

*First*, the prohibition on government sponsorship of religious events means that government officials "may not promote, lead, or participate in any such [event]." *Bd. of Educ. of Westside Cmty. Sch. v. Mergens*, 496 U.S. 226, 253 (1990). Here, the City continues to sponsor, organize, and participate in the very same Memorial Day and Veterans Day events.

The City handpicked American Legion and Stokes County Arts Council to continue the events, and did not announce to the public that it was no longer sponsoring them. The City Council had previously voted "to designate all [Stokes County] Arts Council events held at City of King facilities as City sponsored." Ex. R4 (11/5/12 minutes) at 5–6. The City provided American Legion and Stokes County Arts Council with templates for ads and programs, contact lists, and a planning form and checklist. Ex. JJ2 at Stokes-13–Stokes-14; Ex. JJ3 at Stokes-8, Stokes-11; Ex. JJ4 at AL-187; Ex. JJ5 at King-2312; Ex.

A (Hatley Dep.) at 455:6–456:15, 463:7–464:6; Ex. C (Warren Dep.) at 84:25–85:8.

The 2013 ceremonies were virtually identical to those from past years. Ex. HH (programs) at King-2301, Hewett-810; Ex. E (Holland Dep.) at 47:9–24; Ex. C (Warren Dep.) at 86:17–87:2. The City's fire department displayed a large American flag from one of its trucks at the 2013 Memorial Day ceremony, and the City did not charge for this service. Ex. K2 (American Legion Post 290 interrogatory responses) at 3–4; Ex. E (Holland Dep.) at 121:9–122:12. The City advertises the events on its website; for the 2013 Veterans Day ceremony, for instance, the City invited the public to "[c]ome join us as we honor and pay our respect to the brave men and women of our armed forces and dedicate the new tiles for the Veteran's Memorial." Ex. JJ9 at Hewett-809. The 2013 Veterans Day event also included official dedications of City property, including an addition to the Veterans Memorial and new tiles purchased from the City and added to the memorial. Ex. HH (programs) at Hewett-810; *see also* Ex. A (Hatley Dep.) 287:18–289:16.

Mayor Warren continues to participate extensively in these events—and he does so in his official capacity. *Compare Newman*, 181 F. Supp. 2d at 1381–82 (Mayor and City officials may attend prayer breakfast in individual capacity only). At the 2013 Memorial Day ceremony, the mayor welcomed the audience, thanked the sponsors, asked God to bless America, and helped to lay the ceremonial wreath. Ex. C (Warren Dep.) at 78:24–79:7, 80:2–12; Ex. OO3 (video of ceremony), http://tinyurl.com/ExhibitOO3. At the 2013 Veterans Day ceremony, Mayor Warren welcomed the crowd, introduced a guest speaker, told guests to move to a new location, introduced an Eagle Scout, and

33

helped to lay the wreath. Ex. HH (programs) at Hewett-810; Ex. PP4 (video of ceremony), http://tinyurl.com/ExhibitPP4. Before proselytizing the audience, the guest speaker thanked "Mr. Mayor" for introducing him. The Mayor admits, "it's part of my duties as the mayor to be represented there." Ex. C (Warren Dep.) at 79:8–13.

*Second*, even if the City had actually stopped sponsoring, organizing, and participating in these events, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013). Post-litigation voluntary cessation will moot a case only if subsequent events make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quotation marks omitted).

Here, nothing prevents the City from resuming official sponsorship of the events as soon as this lawsuit ends; the memo purporting to delegate the events to third parties does not bind the City and was not adopted by the City Council. *Jager v. Douglas Cnty. Sch. Dist.*, 862 F.2d 824, 833–34 (11th Cir. 1989) (Establishment Clause challenge not mooted by policy change not formally adopted by Board of Education). Given that it remains intimately involved in these private religious events, the City's ongoing participation is not only possible, but inevitable.

## IV.  The City's Promotion of Christianity at the Veterans Memorial is Impermissibly Coercive.

When he visits the Veterans Memorial or attends its ceremonies, Mr. Hewett must encounter the City's religious messages. The coercion is amplified because the City is

34

advancing Christianity in particular: "When the power, prestige and financial support of government is placed behind a particular religious belief, the indirect coercive pressure upon religious minorities to conform to the prevailing officially approved religion is plain." *Engel v. Vitale*, 370 U.S. 421, 431 (1962). To avoid the City's religious messages, Mr. Hewett must stay away; he visits Memorial less often than he otherwise would as a result of the City's sponsorship of religious displays. Hewett Decl. ¶ 11. But "the State cannot require one of its citizens to forfeit his or her rights and benefits as the price of resisting conformance to state-sponsored religious practice." *Lee*, 505 U.S. at 596. For those who risked their lives to defend the nation's freedoms, this rule has special force.

<u>Conclusion</u>

For the preceding reasons, Mr. Hewett is entitled to summary judgment.

Respectfully submitted,

/s/ John M. Moye

_____

John M. Moye (NC Bar No. 35463)
KILPATRICK TOWNSEND &
STOCKTON LLP
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
(919) 420-1821
JMoye@kilpatricktownsend.com

November 29, 2013

/s/ Gregory M. Lipper

_____

Ayesha N. Khan (*pro hac vice*)
Gregory M. Lipper (*pro hac vice*)
AMERICANS UNITED FOR SEPARATION OF
CHURCH AND STATE
1301 K Street NW, Suite 850
Washington, DC 20005
(202) 466-3234
khan@au.org
lipper@au.org

35

<u>Certificate of Service</u>

On November 29, 2013, I served this brief in support of summary judgment on all counsel of record through the Court's ECF system.

/s/ Gregory M. Lipper
_____
Gregory M. Lipper